**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| Center for Biological Diversity, |
| *Plaintiff*, |
| v. |
| Thomas Tidwell, *et al.*, |
| *Defendants.* |

Civil Action No. 15-2176 (CKK)

**MEMORANDUM OPINION**
(March 9, 2017)

Plaintiff Center for Biological Diversity has brought suit under the Federal Advisory Committee Act ("FACA") and the Administrative Procedures Act ("APA") against Defendants United States Department of Agriculture ("USDA"); United States Forest Service, an agency of the USDA; and Thomas Tidwell, the Chief of the Forest Service. Plaintiff claims that Defendants violated FACA and the APA by convening an advisory committee to develop a conservation strategy for the California spotted owl without following certain procedural requirements that FACA imposes on such committees. Defendants have moved to dismiss the Complaint, ECF No. 1, for lack of subject-matter jurisdiction and for failure to state a claim.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record

---

[1] The Court's consideration has focused on the following documents:

- Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss, ECF No. 10-1 ("Defs.' Mem.").
- Corrected Decl. of James L. Rosen, ECF No. 11-1 ("Rosen Decl.").
- Mem. of P. & A. in Opp. to Defs.' Mot. to Dismiss, ECF No. 12 ("Opp'n Mem.").
- Defs.' Reply Mem. in Supp. of Their Mot. to Dismiss, ECF No. 13 ("Reply Mem.").
- Decl. of Sarah Sawyer, ECF No. 13-1 ("Sawyer Decl.").
- Pl.'s First Sur-reply, ECF No. 18 ("Pl.'s Surreply").
- Pl.'s Second Sur-reply, ECF No. 19-1 ("Pl.'s Second Surreply").
- Defs.' Resp. to Pl.'s Sur-reply Brief, ECF No. 20-1 ("Defs.' Resp.").

as a whole, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' [10]

Motion to Dismiss. Plaintiff's claims survive only to the extent they seek relief under the

APA for Defendants' alleged failure to comply with FACA's document disclosure

provision, 5 U.S.C. app. 2 § 10(b). Accordingly, Plaintiff's other claims are **DISMISSED**

**WITHOUT PREJUDCE**.

## I. BACKGROUND

A.  Statutory Background

FACA imposes a number of procedural requirements on "advisory committees,"

which are defined as "any committee . . . which is . . . established or utilized by one or

more [federal] agencies, in the interest of obtaining advice or recommendations for . . . one

or more agencies or officers of the Federal Government . . . ." 5 U.S.C. app. 2 § 3(2). The

statute exempts "any committee that is composed wholly of full-time, or permanent part-

time, officers or employees of the Federal Government . . . ." *Id*. FACA was enacted out of

> a desire to assess the need for the numerous committees, boards,
> commissions, councils, and similar groups which have been established to
> advise officers and agencies in the executive branch of the Federal
> Government. . . . Its purpose was to ensure that new advisory committees
> be established only when essential and that their number be minimized; that
> they be terminated when they have outlived their usefulness; that their
> creation, operation, and duration be subject to uniform standards and
> procedures; that Congress and the public remain apprised of their existence,
> activities, and cost; and that their work be exclusively advisory in nature.

*Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 445–46 (1989) (internal quotation

marks and citations omitted). To achieve that purpose, FACA requires that advisory

---

Because the Court finds that Plaintiff's Second Surreply and Defendants' Response to
Plaintiff's First Surreply were helpful to its resolution of this matter, the Court **GRANTS**
Plaintiff's [19] Second Motion for Leave to File Sur-reply, and **GRANTS** Defendants' [20]
Motion for Leave to File a Response to Plaintiff's Sur-Reply Brief.

committees, *inter alia*, file a charter, give advance notice of any meeting, hold all meetings open to the public, and keep minutes and other records of those meetings. *See* 5 U.S.C. app. 2 §§ 9(c), 10(a), 10(c). FACA also mandates that, unless an exception applies under the Freedom of Information Act ("FOIA"), "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying . . . ." *Id.* § 10(b). Finally, FACA requires that each advisory committee be "fairly balanced in terms of the points of view represented and the functions to be performed," *id.* § 5(b)(2), and "not be inappropriately influenced by the appointing authority or by any special interest," *id.* § 5(b)(3).

B.  Factual Background

This case involves an advisory committee established to create a conservation strategy for the California spotted owl—"a small and declining genetically-distinct subspecies found primarily in California's Sierra Nevada Region and the mountains of southern California." Opp'n Mem. at 2. As part of a settlement agreement in 2014, the Forest Service agreed to create a spotted owl conservation strategy, but retained the discretion to select experts and to determine the scope of the strategy. *Id*. at 2–3. On September 25, 2015, the Forest Service announced via an "initiation letter" that it was convening "a team of experienced managers and scientific advisors" to develop the conservation strategy (the "Strategy Team"). *Id.* at 3 (quotation marks and citations omitted); Compl. ¶ 24; Rosen Decl. ¶ 5. The Strategy Team met only once before this case was filed, for a two-day period spanning November 12–13, 2015. Compl. ¶ 29; Rosen Decl. ¶ 27.

3

At the time it was formed, the Strategy Team included at least four non-federal scientists, and at least 17 members altogether, but included no experts that had been previously recommended by Plaintiff in a July 2015 letter to the Forest Service. Compl. ¶ 25. Plaintiff sent another letter to the Forest Service after the Strategy Team was convened, requesting that additional experts be included to ensure that the Strategy Team was "fairly balanced," and warning that the team as composed was "not conducive to spotted owl conservation," and that the team was violative of FACA. Plaintiff sent a third letter to the same effect in November 2015. With no response forthcoming from the Forest Service, Plaintiff filed the Complaint on December 15, 2015. Opp'n Mem. at 3–4; Compl. ¶¶ 27–29.

Three days after the Complaint was filed, but before it was served, on December 18, 2015, the Forest Service issued a "revised initiation letter," which relayed that the four non-federal team members would no longer participate in the Strategy Team, meaning that the Strategy Team was then composed entirely of federal employees. Defs.' Mem. at 4. This action was taken "due to the FACA concerns raised by the Center for Biological Diversity . . . ." Rosen Decl. ¶ 10. The four non-federal scientists, however, were not completely separated from the workings of the Strategy Team. Rather, the Forest Service represented that "their input [would] be sought on an individual basis . . . ," but added that the non-federal scientists " [would] not be included in any group emails, conference calls, or working group meetings that are managed or controlled by the Forest Service." *Id*. ¶ 11. Finally, on May 27, 2016, Defendants also publicly disclosed a variety of materials associated with the Strategy Team's November 2015 meeting. Sawyer Decl. at 1–2.

## II. LEGAL STANDARD

A.  Motion to Dismiss for Lack of Subject-Matter Jurisdiction

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), Plaintiff bears the burden of establishing that the Court has subject-matter jurisdiction over its claims. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007); *Ctr. for Arms Control & Non-Proliferation v. Redd*, No. CIV.A. 05-682 (RMC), 2005 WL 3447891, at *3 (D.D.C. Dec. 15, 2005). Although the Court's decision regarding its "subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). In other words, the Court may dismiss Plaintiff's claims because they are moot without deciding whether Plaintiff had standing to bring those claims. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66–67 (1997) ("We may resolve the question whether there remains a live case or controversy . . . without first determining . . . standing . . . because the former question, like the latter, goes to the Article III jurisdiction of this Court and the courts below, not to the merits of the case.").

In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted); *see also* Charles Alan Wright & Arthur R. Miller, 5B Federal Practice & Procedure § 1350 (3d ed. 2017) (noting the "wide array of cases from the four corners of the federal judicial system involving the district court's broad discretion to consider relevant and competent evidence on a motion to dismiss for lack of subject matter

jurisdiction to resolve factual issues"). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal quotation marks omitted).

B.  Motion to Dismiss for Failure to State a Claim

Defendants also move to dismiss the Complaint for "failure to state a claim upon which relief can be granted" pursuant to Federal Rule of Civil Procedure 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted). The court may also consider documents in the public record of which the court may take judicial notice. *Abhe &*

*Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). Apart from these two exceptions, however, "in evaluating a motion for failure to state a claim under Rule 12(b)(6), the Court cannot rely on the same set of materials as in evaluating a motion under Rule 12(b)(1) for lack of jurisdiction" without converting the motion to dismiss into a motion for summary judgment as provided for in Federal Rule of Civil Procedure 12(c). *Hagan v. United States*, 197 F. Supp. 3d 30, 35 (D.D.C. 2016) (Kollar-Kotelly, J.). Whether to convert a motion to dismiss to a motion for summary judgment is a decision "committed to the sound discretion of the trial court." *Flynn v. Tiede-Zoeller, Inc.*, 412 F. Supp. 2d 46, 50 (D.D.C. 2006). Generally, district courts exercise that discretion based on their "determination of whether or not the proffered material, and the resulting conversion . . . is likely to facilitate the disposition of the action." 5C Wright et al., *supra*, § 1366.

## III. DISCUSSION

The Complaint states two "claims for relief." The first alleges that:

> By establishing and/or utilizing the 'California Spotted Owl Conservation Strategy Team' in the interest of obtaining advice or recommendations, obtaining and using the Team's advice, failing to have a Team that is fairly balanced in terms of the points of view represented and the functions to be performed, not opening the Team's meeting(s) to the public, not making Team's documents available to the public, and/or otherwise permitting the Team to meet without complying with FACA, Defendants are violating FACA, and acting in a manner which is arbitrary, capricious, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706.

Compl. ¶ 34. The second claim for relief alleges that:

> By engaging in a pattern and practice of violating FACA, Defendants have acted, and are acting, in a manner which is arbitrary, capricious and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706.

Compl. ¶ 36. The Court's analysis proceeds in two parts. First, the Court addresses Plaintiff's claims to the extent they seek relief for violations of FACA's procedural

mandates *other than* the document disclosure requirement imposed by 5 U.S.C. app. 2 §

10(b) (referred to herein as "section 10(b)"). The Court finds that these claims, including

claims based on the requirement that the Strategy Team be "fairly balanced in terms of the

points of view represented," have been mooted by the change in the composition of the

Strategy Team. In doing so, the Court also concludes that Plaintiff's second claim for relief

must be dismissed in its entirety, as no "pattern or practice" of FACA violations has been

plausibly alleged, nor is one apparent from the record as a whole. Finally, with respect to

the alleged violations of section 10(b), the Court concludes that this claim has not been

rendered moot, and that Plaintiffs may pursue this claim pursuant to the APA, but not

directly under FACA.

   A.  FACA Does Not Provide a Cause of Action

      As a preliminary matter, the Court addresses whether FACA provides a cause of

action. Defendants contend that "FACA contains no provision for judicial review," and

that accordingly, "judicial review for [P]laintiff's FACA claim derives from the [APA]."

Defs.' Mem. at 10. Plaintiff frequently discusses the Complaint as if it brings causes of

action under both FACA and the APA, but never directly challenges Defendants'

contention that FACA does not provide a cause of action. Although decisions of the United

States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") and the

Supreme Court of the United States have sometimes assumed without elaboration that

FACA provides a cause of action, *see Judicial Watch, Inc. v. Nat'l Energy Policy Dev.*

*Grp.*, 219 F. Supp. 2d 20, 34 (D.D.C. 2002) (collecting cases), those decisions precede

*Sandoval*, wherein the Supreme Court held that with respect to causes of action, the

"judicial task is to interpret the statute Congress has passed to determine whether it displays

an intent to create not just a private right but also a private remedy. . . . Statutory intent on this latter point is determinative." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citation omitted). Since *Sandoval*, courts in the D.C. Circuit have largely held that FACA does not provide a cause of action, given that none is apparent from the statutory text. *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 736 F. Supp. 2d 24, 30 (D.D.C. 2010) ("Because the FACA does not explicitly confer a private remedy, *see generally* 5 U.S.C. app. 2, and because this fact alone is 'determinative,' the court holds that the FACA does not provide the plaintiff with a private right of action."); *Nat'l Energy*, 219 F. Supp. 2d at 34 ("Notwithstanding the relative confusion that exists within the FACA doctrine with respect to this question, the Supreme Court's standard is now clear: this Court cannot read into a statute a cause of action that Congress has not expressly created."); *Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 32–33 (D.D.C. 2011); *see also In re Cheney*, 334 F.3d 1096, 1113 n.1 (D.C. Cir. 2003) (Randolph, C.J., dissenting), *vacated and remanded sub nom. Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367 (2004) (noting that "[a]ll agree that FACA does not itself create a cause of action").[2] The Court concurs with the reasoning of those decisions, and finds that FACA does not provide a private cause of action in this case.

---

[2] Only one decision by a court in the D.C. Circuit has suggested otherwise since *Sandoval*. *Ctr. for Arms Control & Non-Proliferation v. Lago*, No. CIV A 05-682 RMC, 2006 WL 3328257, at *4 (D.D.C. Nov. 15, 2006) (noting that "it appears that the Supreme Court has essentially assumed that citizens may sue if they have been denied access to records under FACA"), *aff'd sub nom. Ctr. for Arms Control & Non-Proliferation v. Pray*, 531 F.3d 836 (D.C. Cir. 2008). Nevertheless, the issue of whether FACA provides a cause of action was irrelevant to the ultimate holding in *Lago*, which was that the relevant committee was not subject to FACA, mandating dismissal of the lawsuit, 2006 WL 3328257, at *8; and the D.C. Circuit affirmed *Lago* on the same basis, without any discussion of whether FACA provides a cause of action, 531 F.3d at 844.

Accordingly, Plaintiff's claims must be dismissed to the extent they are premised on the existence of one.

Plaintiff also alleges that Defendants, by failing to comply with FACA, violated section 706 of the APA by acting in a "manner which is arbitrary, capricious, and contrary to law." Compl. ¶ 34 (citing 5 U.S.C. § 706). This Court has jurisdiction under the APA to review final agency actions for which there is no other adequate remedy. 5 U.S.C. § 704. Defendants do not contest that Plaintiff may proceed under the APA, and the Court agrees that Plaintiff may, as the Complaint is brought against two federal agencies, and Plaintiff challenges the actions of those agencies in failing to comply with FACA in relation to an alleged advisory committee convened by the Forest Service. *Dep't of Commerce*, 736 F. Supp. 2d at 30 (holding that plaintiff could bring FACA claims pursuant to the APA); *Nat'l Energy*, 219 F. Supp. 2d at 40 (finding that "to hold meetings closed to the public and without complying with the various procedural requirements of FACA" was a final agency action subject to review under the APA).

B.  Plaintiff's Non-Document FACA Claims are Moot

The Court turns to address whether it has jurisdiction over Plaintiff's claims stemming from alleged violations of FACA's procedural requirements, other than the document disclosure provision of section 10(b), which is addressed in the next section.

The jurisdiction of federal courts is limited by Article III of the Constitution to the adjudication of actual, ongoing cases or controversies. This limitation "gives rise to the doctrines of standing and mootness." *Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003); *Sierra Club v. Jackson*, 648 F.3d 848, 852 (D.C. Cir. 2011). Pursuant to the mootness doctrine, it "is not enough that the initial requirements of standing and ripeness

have been satisfied; the suit must remain alive throughout the course of litigation, to the moment of final appellate disposition. If events outrun the controversy such that the court can grant no meaningful relief; the case must be dismissed as moot." *People for the Ethical Treatment of Animals, Inc. v. United States Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 95 (D.D.C. 2014) ("*PETA*") (internal quotation marks and citations omitted). "A case is moot when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated in circumstances where it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009) (internal quotation marks omitted).

Mootness is often described as "the doctrine of standing set in a time frame: [t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189–90 (2000) (internal quotation marks omitted). Nevertheless, two important caveats to the mootness doctrine distinguish it from standing. *See id*. Both allow a district court to retain jurisdiction over a dispute if the halt in offending conduct is more of a temporary reprieve than a bonafide resolution of the matter. First, under the voluntary cessation doctrine, if a defendant chooses to terminate the challenged conduct after a lawsuit is filed, the defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id*. at 190. The voluntary cessation doctrine ensures "that a defendant is not 'free to return to his old ways' after it takes unilateral action that moots a case." *PETA*, 59 F. Supp. 3d at 96 (citing *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)); *see also Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008). Second, under "the capable of repetition yet evading

review" doctrine, a plaintiff may avoid dismissal by demonstrating that "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009) (internal quotation marks and alterations omitted). Unlike the voluntary cessation doctrine, pursuant to which a case is not moot *unless* the defendant demonstrates that his or her wrongful conduct is not reasonably expected to resume, the "capable of repetition yet evading review" exception applies only if the plaintiff demonstrates that his or her lawsuit fits the exception. *See Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) ("The initial 'heavy burden' of establishing mootness lies with the party asserting a case is moot . . . but the opposing party bears the burden of showing an exception applies . . . ." (citations omitted)).

Unlike claims for document disclosure pursuant to section 10(b), which survive the termination of a FACA advisory committee, *see infra* at 19, courts in the D.C. Circuit have routinely held that claims based on FACA's other procedural requirements are mooted when the relevant advisory committee ceases to exist. *See Freedom Watch, Inc. v. Obama*, 859 F. Supp. 2d 169, 174 (D.D.C. 2012) ("Because there are no grounds to find that the alleged committee, even if it did at some point exist, exists at present, the case is moot with respect to . . . claims for advance notice of, and the ability to participate in, any future meetings of the [committee], and with respect to . . . the appointment of 'at least one person with a different point of view' to the committee."); *Citizens for Responsibility & Ethics in Washington v. Duncan*, 643 F. Supp. 2d 43, 51 (D.D.C. 2009) ("Regarding the Department's other alleged FACA violations, including the violation of FACA's open

meetings and charter requirements, the Department's establishment of the New Panel renders these claims moot."); *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 879 F. Supp. 103, 106 (D.D.C. 1994) ("Plaintiffs' suggestion that a declaratory judgment might be appropriate even if the working group has been terminated and all appropriate working group documents have been publicly released is also rejected. At that point, there will simply be no continuing case or controversy for judicial resolution. Nor will there be any basis for injunctive or other equitable relief. The case will in fact be moot, and defendants will be legally entitled to dismissal."); *see also Byrd v. U.S. E.P.A.*, 174 F.3d 239, 244 (D.C. Cir. 1999) (noting that plaintiff's "injury would be mooted if EPA convened another panel . . . in compliance with FACA and provided [plaintiff] with all panel documents either before or at the meeting").

The Court assumes, *arguendo*, that the Strategy Team as constituted in September 2015 was a FACA advisory committee. Nonetheless, by December 2015, the Strategy Team no longer formally included any non-federal employees. *See supra* at 4. As such, the Strategy Team now falls within the exemption in 5 U.S.C. app. 2 § 3(2) for "any committee that is composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government." In other words, by operation of law, the FACA advisory committee at issue in this matter—the Strategy Team as composed in September 2015—no longer exists. Plaintiff asserts, however, that "although Defendants claim that the four non-federal scientists no longer participate in the subgroups to which they had previously been assigned, Defendants nonetheless admit that they will 'continue to draw on [these scientists'] expertise on an individual basis.'" Opp'n Mem. at 19–20 (alteration in original). In other words, although Defendants have removed the non-federal scientists from the

13

committee, Plaintiff contends that Defendants plan to rely on those non-federal scientists in a manner that will render them de facto members of the Strategy Team. Because Defendants voluntarily changed the composition of the Strategy Team, in order for the Court to find that Plaintiff's non-section 10(b) claims have been mooted by that change, Defendants must demonstrate that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190.[3]

Based on the present record, the Court finds that Defendants have met that burden: there is no reasonable expectation at this time that the Strategy Team will again fall out of compliance with FACA. Defendants, by declaration submitted under penalty of perjury, have represented that the decision to change the composition of the Strategy Team was taken to ensure that the team complied with FACA. Rosen Decl. ¶ 10 ("due to the FACA concerns raised by [Plaintiff] in a letter dated November 10, 2015, the Forest Service, in an abundance of caution, removed the [non-federal] scientists" from the Strategy Team). The Team now consists only of federal scientists. Although Defendants admit that "as development of the Conservation Strategy proceeds, the Forest Service intends to solicit the expertise of [the non-federal scientists]," *id.* ¶ 11, they represent that "since these scientists are no longer part of the Strategy working group, their input will be sought on an individual basis and they will not be included in any group emails, conference calls, or

---

[3] Defendants claim that their actions were not "voluntary" within the meaning of the voluntary cessation doctrine. Defs.' Mem. at 17. The Court disagrees. Although Defendants reconstituted the Strategy Team before they were served with the Complaint (but after it was filed), their decision to do so stemmed from their concern that the Strategy Team did not comply with FACA. Rosen Decl. ¶ 10. Consequently, even if Defendants were unaware of this particular lawsuit, it is not the case that "the challenged activity stop[ed] for reasons unrelated to litigation." Defs.' Mem. at 17 (citing *Wyo. Outdoor Council v. Dombeck*, 148 F. Supp. 2d 1, 9 (D.D.C. 2001)).

working group meetings that are managed or controlled by the Forest Service." *Id*. Plaintiff claims that this will render the non-federal scientists de facto members of the Strategy Team and thereby turn the Strategy Team once again into a FACA advisory committee. But that conclusion conflicts with the binding decisions of the D.C. Circuit on who is a "member" of a purported FACA advisory committee.

First, in *Association of American Physicians & Surgeons, Inc. v. Clinton*, the D.C. Circuit instructed that

> a consultant may still be properly described as a member of an advisory committee if his involvement and role are functionally indistinguishable from those of the other members. . . . If a 'consultant' regularly attends and fully participates in working group meetings as if he were a 'member,' he should be regarded as a member. Then his status as a private citizen would disqualify the working group from the section 3(2) exemption for meetings of full-time government officials.

997 F.2d 898, 915 (D.C. Cir. 1993). Subsequently, in *In re Cheney*, the D.C. Circuit offered a far more restrictive view on who is an advisory committee member for purposes of the section 3(2) exemption, holding that "a committee is composed wholly of federal officials if the President has given no one other than a federal official a vote in or, if the committee acts by consensus, a veto over the committee's decisions." 406 F.3d 723, 728 (D.C. Cir. 2005). Admittedly, the decision in *Cheney* was informed by the "severe separation-of-powers problems" peculiar to that case, and even there, the D.C. Circuit appears to have left open the possibility that de facto participation in an advisory committee by non-federal employees could void the section 3(2) exemption. *See Freedom Watch*, 807 F. Supp. at 35–36. Nevertheless, even under the more lenient standard set forth in *Clinton*, there is no reasonable expectation that merely seeking input from the non-federal scientists "on an individual basis" and under circumstances where "they will not be included in any group

emails, conferences calls, or working group meetings that are managed or controlled by the Forest Service," will render them de facto members of the Strategy Team, given that their "involvement and role" will *not* be "functionally indistinguishable" from formal members of the Strategy Team. *See Duncan*, 643 F. Supp. 2d at 51 (holding that where a new advisory committee had been created in compliance with FACA, "[w]ithout further evidence to the contrary, this Court has 'no reasonable expectation that the Department's FACA violations will be repeated'" (alterations omitted)).[4]

Furthermore, even were the Strategy Team to transform again into a FACA advisory committee, that does not mean that the wrongful conduct at issue in this case will be repeated. Rather, Defendants may choose to comply with FACA's open meetings, fair balance, and other non-section 10(b) requirements at that point; and as "other Circuits have consistently recognized[,] . . . where the defendant is a government actor—and not a private litigant—there is less concern about the recurrence of objectionable behavior." *Citizens for Responsibility & Ethics in Washington v. U.S. S.E.C.*, 858 F. Supp. 2d 51, 61 (D.D.C. 2012) (collecting cases); *see also Larsen*, 525 F.3d 1 at 4 ("[T]he mere power to reenact a challenged policy is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists. Rather, there must be evidence indicating that the challenged policy likely will be reenacted." (internal quotation marks and alterations

---

[4] Although Plaintiff seeks to rely on *Heartwood, Inc. v. U.S. Forest Service*, that case resolved the question of whether a group of individuals were a FACA advisory committee, and not whether informal participation in a committee could render someone an advisory committee member. Moreover, *Heartwood* held that even though the team members at issue "drafted their summaries in sub-groups or individually, and not as one large group," the team "met twice as a group to discuss the existing data available and to outline the report." 431 F. Supp. 2d 28, 35 (D.D.C. 2006). Consequently, unlike here, all of the purported team members in *Heartwood* appear to have been formal and equally participating members of the alleged FACA advisory committee.

omitted)). Accordingly, the Court finds that based on the present record, there is no reasonable expectation that the wrongful conduct at issue here—the formation of a FACA advisory committee and subsequent failure to comply with FACA—will reoccur. This, of course, is a prediction; but if Defendants do violate FACA in the future in connection with the Strategy Team, Plaintiff may renew its non-document FACA claims, and any subsequent voluntary cessation shall be viewed with considerable skepticism by the Court. *See Jesus, Inc. v. Hillsborough County Aviation Authority*, 162 F.3d 627, 630 (11th Cir. 1998).[5] For the same reasons, and although Plaintiff has failed to even allege or otherwise contend in their briefing that this case is "capable of repetition yet evading review," the Court finds that this mootness exception similarly does not apply under the circumstances as there is no "reasonable expectation that the same complaining party would be subjected to the same action again." *Del Monte*, 570 F.3d at 322.

Plaintiff also alleges that Defendants are "engaging in a pattern and practice of

---

[5] Plaintiff has also requested jurisdictional discovery to "assess what is actually happening with the non-federal employees and the overall Team membership." Opp'n Mem. at 20. The Court denies this request, without prejudice, as such discovery would be tantamount to continuing oversight over the workings of the Strategy Team. The historical facts of the Strategy Team are not in dispute and Plaintiff has not provided the Court with any non-speculative reason to conclude that the Strategy Team will be operated in a manner inconsistent with the Rosen Declaration. That one of the federal team members has been replaced by another federal team member, if anything, supports that conclusion. *See* Pl.'s Second Surreply at 1; *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008) ("a request for jurisdictional discovery cannot be based on mere conjecture or speculation"); *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 53 (D.D.C. 2003) ("Where there is no showing of how jurisdictional discovery would help plaintiff discover anything new, it is inappropriate to subject defendants to the burden and expense of discovery." (internal quotation marks and alterations omitted)); *Williams v. ROMARM*, 187 F. Supp. 3d 63, 72 (D.D.C. 2013), *aff'd sub nom. Williams v. Romarm, SA*, 756 F.3d 777 (D.C. Cir. 2014) ("[W]hen requesting jurisdictional discovery, a plaintiff must make a detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." (internal quotation marks and alterations omitted)).

violating FACA," which, if countenanced by the Court, could potentially save Plaintiff's non-document FACA claims from mootness. Compl. ¶ 36; Opp'n Mem. at 25. That allegation is based on *Payne Enterprises, Inc. v. United States*, a case brought pursuant to the Freedom of Information Act, and therefore of questionable applicability to Plaintiff's claims pursuant to FACA and the APA. 837 F.2d 486, 491 (D.C. Cir. 1988); *see also Del Monte Fresh Produce N.A., Inc. v. United States*, 706 F. Supp. 2d 116, 119 (D.D.C. 2010) (holding that claims challenging a "pattern and practice" of unreasonable delay are not justiciable under the APA). Without deciding whether a "pattern and practice" claim could be brought under the circumstances of this case, the Court finds that no pattern or practice of FACA violations is apparent from the record, nor has one been plausibly alleged. Plaintiff claims that "Defendants are engaging in a pattern and practice of violating FACA by having to constantly reach out beyond the Group's/Team's federal employees to non-federal owl scientists . . . ." Opp'n Mem. at 24. But for the reasons stated above, there is no reason to believe that this alleged future conduct will violate FACA, and no plausible facts have been alleged to buttress this claim; rather, the Complaint merely makes the conclusory assertion that Defendants are engaged in a pattern and practice of violating FACA. Compl. ¶ 36. Consequently, there is only one FACA violation before the Court— that is, the one allegedly stemming from the creation of the Strategy Team in September 2015—and that does not suffice to make a "pattern or practice" of FACA violations, either under a Rule 12(b)(1) or Rule 12(b)(6) analysis. *See Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 231 (D.D.C. 2011) ("The Court concludes that an allegation of a single FOIA violation is insufficient as a matter of law to state a claim for relief based on a policy, pattern, or practice of violating FOIA."). That leads inexorably to two conclusions. First,

under a Rule 12(b)(1) analysis of the entire record, the pattern and practice claim is not viable, and therefore cannot save Plaintiff's non-section 10(b) claims from mootness. Second, based on the well-pleaded factual allegations in the Complaint, and drawing all reasonable inferences in favor of Plaintiff, the pattern and practice claim is implausible, and therefore must be dismissed pursuant to Rule 12(b)(6).

Finally, Plaintiff is not aided by its request for a declaratory judgment. *See* Opp'n Mem. at 23. Generally, if a case is moot, a request for declaratory judgment will not resuscitate the lawsuit, unless an exception to the mootness doctrine applies. *NBC-USA Hous., Inc., Twenty-Six v. Donovan*, 674 F.3d 869, 873 (D.C. Cir. 2012) ("Where an intervening event renders the underlying case moot, a declaratory judgment can no longer 'affect[ ] the behavior of the defendant towards the plaintiff . . . .'" (alteration in original)); *PETA*, 59 F. Supp. 3d at 96 ("[t]hat mootness of a claim against a specific agency action also moots claims for declaratory relief over those specific agency actions is well-attested in D.C. Circuit precedent"). Here, the Court has already determined that no exception to the mootness doctrine applies. However, Plaintiff seeks to rely on *Byrd*, where the D.C. Circuit held that a request for declaratory judgment was not moot, even after the advisory committee had been disbanded and the relevant materials disclosed, because "such a declaration [would] give [plaintiff] ammunition for his attack on the Committee's findings in subsequent agency proceedings . . . ." 174 F.3d at 244 (internal quotation marks omitted). The D.C. Circuit ultimately found that plaintiff's claim was not moot because his injury arose "not only from EPA's failure to provide him materials but also from the tardiness of their eventual release . . . ." *Id*. That decision, however, is not applicable to this case as the relevant holding in *Byrd* dealt only with a request for document disclosure pursuant to

section 10(b). *See Duncan*, 643 F. Supp. 2d at 50–51 ("in *Byrd*, the need for declaratory relief turned on the timeliness of the production"). Here, the Court holds that Plaintiff's section 10(b) claim may proceed, and *Byrd* did not address the effect, if any, of a request for declaratory judgment on the mootness of claims for violations of FACA's other procedural requirements. Beyond that legal distinction, there is also no suggestion before the Court that the advisory committee in this matter has completed its work and made its recommendations to the convening agency, such that a declaratory judgment would assist Plaintiff in challenging subsequent agency proceedings based on those recommendations, which was the factual premise underlying the decision in *Byrd*. Finally, as a practical matter, to the extent a declaratory judgment is ultimately appropriate due to the "tardiness" of Defendants' document disclosure, that relief may be granted at a later stage in these proceedings in connection with Plaintiff's claim under section 10(b).

Accordingly, for all of the foregoing reasons, the Court concludes that Plaintiff's claims for violations of FACA's procedural requirements, other than the document disclosure provision of section 10(b), are moot, and must be dismissed without prejudice.

C.  Plaintiff's Section 10(b) Claim Does Not Require Dismissal

FACA provides for public access to certain advisory committee materials. 5 U.S.C. App. 2 § 10(b). The government is required to make section 10(b) materials available to the public as a matter of course, unless a FOIA exception applies. *Food Chem. News v. Dep't of Health & Human Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992). A claim for document disclosure survives the termination of a FACA advisory committee, at least until all of the relevant materials have been disclosed. *Cummock v. Gore*, 180 F.3d 282, 292 (D.C. Cir. 1999); *Nat'l Energy*, 219 F. Supp. 2d at 30 ("whether relief [seeking section

10(b) materials] is available is contingent not on the continued existence of the group, but on the continued existence of the records and information"); *Freedom Watch*, 859 F. Supp. 2d at 174. However, Defendants have asserted that all of the relevant section 10(b) materials associated with the November 2015 Strategy Team meeting have been disclosed, thereby mooting any claim for relief stemming from section 10(b). Reply Mem. at 3. Plaintiff strenuously objects and cites two categories of Strategy Team materials that Defendants allegedly should have, but did not, disclose pursuant to section 10(b). Pl.'s Surreply at 2. These materials include certain correspondence and the first three chapters of a conservation strategy memorandum prepared by members of the Strategy Team. *Id*. Defendants respond that they are not required to disclose these materials under FACA, and that no additional materials requiring disclosure exist. Defs.' Resp. at 1–2. In this instance, the Court agrees with Plaintiff.

Defendants make much of their disclosure of materials from the November 2015 meeting of the Strategy Team. But section 10(b) also requires the disclosure of documents that "were made available to or *prepared for* or by each advisory committee . . . ." 5 U.S.C. App. 2 § 10(b) (emphasis added). At minimum, the undisclosed draft strategy chapters may require disclosure as, based on Defendants' declarations, those chapters were prepared by Strategy Team members for the eventual use of the Strategy Team. *See* Rosen Decl. ¶¶ 22– 25. Defendants claim that the draft chapters are exempt from FACA because they are the "preliminary work of subgroups," which need not be disclosed under FACA. The sources Defendants cite for this contention, however, are inapposite. They stand for the very different point that materials produced by *staff* of advisory committees, as opposed to *members* of those committees, may not need to be disclosed under section 10(b). Defs.'

Resp. at 2 n.1.[6] Accordingly, the Court concludes Defendants have not demonstrated that all of the requisite section 10(b) materials have been disclosed, meaning that Plaintiff's section 10(b) claim is not moot, and that the Court has subject-matter jurisdiction over the claim.

Furthermore, the Court finds that Plaintiff has pleaded a viable claim under the APA for a violation of section 10(b), as the Complaint plausibly alleges that the Strategy Team was a FACA advisory committee, and that the Forest Service failed to disclose the materials required by section 10(b). The Strategy Team was convened by the Forest Service, a federal agency; initially included non-federal employees as members; and was tasked with providing advice to the Forest Service regarding California spotted owl conservation. Compl. ¶¶ 24–26; *see* 5 U.S.C. app. 2 § 3(2). The Complaint also alleges that "documents associated with the [November 2015 meeting of the Strategy Team], as well as documents associated with the Team's actions thus far, have not been released to the public despite repeated requests for them." Compl. ¶ 29. Although this statement is belied to some extent by Defendants' declarations, those declarations may not be reviewed by the Court in the context of a Rule 12(b)(6) analysis without converting the motion to dismiss into one for

---

[6] In particular, Defendants cite *National Anti-Hunger Coalition* for the statement that "surely Congress did not contemplate that interested parties like the plaintiffs should have access to every paper through which recommendations are evolved, have a hearing at every step of the information-gathering and preliminary decision-making process, and interject themselves into the necessary underlying staff work so essential to the formulation of ultimate policy recommendations." *Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control*, 557 F. Supp. 524, 529 (D.D.C.), *aff'd*, 711 F.2d 1071 (D.C. Cir. 1983). That statement, however, was made in the context of the court ruling that certain "task forces" that performed "staff functions" for a FACA advisory committee were themselves not FACA advisory committees. The Office of Legal Counsel memorandum cited by Defendants essentially mirrors the holding in *National Anti-Hunger Coalition*. Defs.' Resp. at 2 (citing Disclosure of Advisory Comm. Deliberative Materials, 12 U.S. Op. Off. Legal Counsel 73, 75 (1988)).

summary judgment. *See supra* at 6–7. The Court declines to do so because, for the reasons stated above, even with the document disclosures that are described in the declarations, it does not appear that Defendants have conclusively met their obligations under section 10(b), meaning a conversion to summary judgment would not "likely . . . facilitate the disposition of the action." *Id.* Accordingly, Plaintiff has stated a viable claim for relief under the APA for Defendants' alleged violation of section 10(b) in connection with the Strategy Team.

## IV. CONCLUSION

For all of the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' [10] Motion to Dismiss. Plaintiff's claims survive only to the extent they seek relief under the APA for Defendants' alleged failure to comply with FACA's document disclosure provision, 5 U.S.C. app. 2 § 10(b). Accordingly, Plaintiff's other claims are **DISMISSED WITHOUT PREJUDCE**.

In addition, the Court **GRANTS** Plaintiff's [19] Second Motion for Leave to File Sur-reply, and **GRANTS** Defendants' [20] Motion for Leave to File a Response to Plaintiff's Sur-Reply Brief.

An appropriate Order accompanies this Memorandum Opinion.

Dated: March 9, 2017

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge